UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TIMOTHY A. HICKLE,               )
                                           )
          Plaintiff,               )
                                           )
v.                               )     3:06-CV-488
                                         )     (PHILLIPS/GUYTON)
                                         )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,   )
                                         )
          Defendant.            )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the

disposition by the District Court of the plaintiff's motion for summary judgment [Doc. 10] and the

defendant Commissioner's motion for summary judgment. [Doc. 14]. Plaintiff Timothy A. Hickle

("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final

decision of the defendant Commissioner ("the Commissioner").

**I.**     **ALJ Findings**

The ALJ made the following findings:

       1.  The claimant meets the nondisability requirements for a period of
disability and Disability Insurance Benefits set forth in Section 216(i)
of the Social Security Act and is insured for benefits through March
31, 2005.

       2.  The claimant has not engaged in substantial gainful activity since
the alleged onset of disability.

       3.   The claimant's AIDS, hepatic infection, and depression are
considered "severe" based on the requirements in the Regulations 20

C.F.R. §§ 404.1520(c) and 416.920(c).

4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the following residual functional capacity: unskilled sedentary exertion.

7.   The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.964).

8.   The claimant is a "younger person" (20 C.F.R. §§ 404.1563 and 416.963).

9.   The claimant has a "high school (or high school equivalent) education" (20 C.F.R. §§ 404.1564 and 416.964).

10.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case.  (20 C.F.R. §§ 404.1568 and 416.968).

11.   There has been no continuous, twelve month period of duration that the claimant has not had the residual functional capacity to perform a significant range of sedentary work (20 C.F.R. §§ 404.1567 and 416.967).

12.  Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rules 201.27/201.28 as a framework for decision-making, there are a significant number of jobs in that national economy that he could perform.  (Social Security Ruling 96-9p).

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time relevant to this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[Tr.  24].

## II.    Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).  "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A).  [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  1142 U.S.C. § 1382c(a)(3)(B).  Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §404.1520).

Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden

shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that

there is work available in the national economy that the claimant could perform. Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the

Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and

whether the ALJ applied proper legal standards. Key v. Callahan, 109 F.3d 273 (6th Cir. 1997).

Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001)

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "[m]ore than a mere scintilla, but

less than a preponderance of evidence." Bruce v. Sec'y of Health & Human Servs., 52 F.3d 324,

1995 WL 154891, at *2 (6th Cir. Apr. 6, 1995) (per curiam). To determine whether substantial

evidence exists, the Court must review the administrative record as a whole. Cutlip v. Sec'y of

Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings

is not appropriate "merely because there exists in the record substantial evidence to support a

different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001); see also Her, 203 F.3d

at 389-90 (holding that "even if the evidence could also support another conclusion, the decision of

the Administrative Law Judge must stand if the evidence could reasonably support the conclusion

reached"); Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless

the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed).  The Court may not review the case <u>de novo</u>, resolve conflicts in evidence, or decide questions of credibility.  <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

## IV.  Arguments

Plaintiff argues on appeal that substantial evidence did not support the decision of the ALJ, because the ALJ erred by: (A) failing to find that Plaintiff meets Listing 14.08N; (B) failing to fully evaluate Plaintiff's need for absences and excessive work breaks; and (C) rejecting the opinions of Plaintiff's treating psychiatric sources. [Docs. 10, 11].  The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff. Specifically, the Commissioner argues that substantial evidence exists to support the ALJ's analysis of the medical opinions in the record, and the ALJ properly relied on the testimony of a vocational expert to determine that a sufficient number of jobs, that Plaintiff is capable to perform, exist in the national economy.  Accordingly, the ALJ correctly concluded that Plaintiff was not disabled. [Docs. 14, 15].  These issues will be discussed hereinafter.

### A.  Listing 14.08N

Plaintiff alleges that the ALJ erred in failing to find that Plaintiff meets a listed impairment: 14.08N.  The burden of proving the existence of a disability is on the claimant.  <u>See</u> 20 C.F.R. § 404.1512(a).  Regulations further require that the claimant "must provide medical evidence showing that [the claimant has] an impairment(s) and how severe it is." 20 C.F.R. § 404.1512(c). Listing 14.08 states, in relevant part:

> 14.08 Human immunodeficiency virus (HIV) infection. With documentation as described in 14.00D3 and one of the following:
> . . . . .
> N. Repeated (as defined in 14.00D8) manifestations of HIV infection

5

(including those listed in 14.08A-M, but without the requisite findings, e.g., carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08J, or other manifestations, e.g., oral hairy leukoplakia, myositis) resulting in significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and one of the following at the marked level (as defined in 14.00D8):

> 1. Restriction of activities of daily living; or
> 2. Difficulties in maintaining social functioning; or
> 3. Difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Regulations further define the terms in Listing 14.08N:

> Functional criteria. Paragraph N of 14.08 establishes standards for evaluating manifestations of HIV infection that do not meet the requirements listed in 14.08A-M. . . .

> For individuals with HIV infection evaluated under 14.08N, listing-level severity will be assessed in terms of the functional limitations imposed by the impairment. The full impact of signs, symptoms, and laboratory findings on the claimant's ability to function must be considered. Important factors to be considered in evaluating the functioning of individuals with HIV infection include, but are not limited to: symptoms, such as fatigue and pain; characteristics of the illness, such as the frequency and duration of manifestations or periods of exacerbation and remission in the disease course; and the functional impact of treatment for the disease, including the side effects of medication.

> As used in 14.08N, "repeated" means that the conditions occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; or the conditions do not last for 2 weeks but occur substantially more frequently than 3 times in a year or once every 4 months; or they occur less often than an average of 3 times a year or once every 4 months but last substantially longer than 2 weeks.

> To meet the criteria in 14.08N, an individual with HIV infection must demonstrate a marked level of restriction in one of three general areas of functioning: activities of daily living; social functioning; and difficulties in completing tasks due to deficiencies in concentration, persistence, or pace. Functional restrictions may result from the

impact of the disease process itself on mental or physical functioning, or both. This could result from extended or intermittent symptoms, such as depression, fatigue, or pain, resulting in a limitation of the ability to concentrate, to persevere at a task, or to perform the task at an acceptable rate of speed. Limitations may also result from the side effects of medication.

When "marked" is used as a standard for measuring the degree of functional limitation, it means more than moderate, but less than extreme. . . . [A]n individual need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, and effectively. The term "marked" does not imply that the impaired individual is confined to bed, hospitalized, or in a nursing home.

. . . . .

Completing tasks in a timely manner involves the ability to sustain concentration, persistence, or pace to permit timely completion of tasks commonly found in work settings. An individual with HIV infection who, because of HIV-related fatigue or other symptoms, is unable to sustain concentration or pace adequate to complete simple work-related tasks (even though he or she is able to do routine activities of daily living) would have marked difficulty completing tasks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00D8. Therefore, to be categorized as Listing 14.08N, a

person's impairment must not meet any of the listings in 14.08A-M. Id. Additionally, the person

must have a repeated manifestation of HIV infection, significant documented symptoms, and one

of the following at a marked level (1) restriction of activities of daily living; (2) difficulties in

maintaining social functioning; or (3) difficulties in completing tasks in a timely manner due to

deficiencies in concentration, persistence, or pace, as defined in Listing 14.00D8. 20 C.F.R. Pt. 404,

Subpt. P, App. 1, 14.08N. A "marked" level is more than moderate, but less than extreme. 20

C.F.R. Pt. 404, Subpt. P, App. 1, 14.00D8. To qualify, "[a]n individual need not be totally precluded

from performing an activity to have a marked limitation, as long as the degree of limitation is such

as to seriously interfere with the ability to function independently, appropriately, and effectively."

20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00D8.

There is no dispute that Plaintiff suffers from acquired immune deficiency syndrome ("AIDS").[1] [ALJ: Tr. 24; Doctors: Tr. 180, 182, 192, 215-18, 263, 259, 261, 265, 267, 269, 380, 493]. As such, Plaintiff has satisfied the first requirement for a 14.00 listing. Additionally, Plaintiff does not allege, and this Court so finds that Plaintiff's impairment does not meet or exceed the listed impairments of 14.08A through 14.08M. Therefore, the only listed impairment which Plaintiff could potentially meet is 14.08N.

To meet or exceed Listing 14.08N, a person must have significant documented symptoms and repeated manifestations of the AIDS or HIV infection. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.08N. One definition of "repeated" is that the condition does not last for two weeks or more in one episode, but that it occurs substantially more frequently than three time in a year or once every four months. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00D8. In addition to repeated, documented symptoms, the person must have one of the following at a marked level (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; or (3) difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.08N. To qualify as having a "marked" difficulty or restriction, a Plaintiff must prove that the difficulty or restriction is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00D8.

The ALJ found that Plaintiff's AIDS was severe, but that it did not meet or medically equal a listed impairment. [Tr. 24]. Specifically, the ALJ noted that Plaintiff had not provided "[c]linical

---

[1] It is similarly clear that Plaintiff also suffers from chronic Hepatitis C. [ALJ: Tr. 24; Doctors: Tr. 215-218, 259, 261, 263, 265, 267, 269, 493, 536-37]. However, Plaintiff's Hepatitis C is not central to the issues before this Court and will not be discussed further.

or objective medical evidence sufficient to rebut the opinions of State Agency medical consultants[2] that no listed impairment had been met or equaled in severity by any of Mr. Hickle's medically determinable impairments." [Tr. 20]. In support thereof, the ALJ wrote that Listing 14.08N was not met because one of Plaintiff's treating physicians, Dr. Spalding, showed an assessment of "[n]o more than a slight restriction of activities of daily living or ability to maintain social functioning, and the equivalent of no more than moderate difficulty in sustaining concentration, persistence, or pace." [Tr. 21]. As Plaintiff correctly notes, the ALJ's stated rationale for finding that Plaintiff did not meet Listing 14.08N focuses exclusively on psychiatric functioning. [See Tr. 20-21].

A decision may only be upheld when it is based on substantial evidence and on the proper legal criteria. Blankenship v. Sec'y of Health & Human Servs., 874 F.2d 1116, 1120-21 (6th Cir. 1989) (citing Gaffney v. Bowen, 825 F.2d 98 (6th Cir. 1987)). The ALJ's reasoning indicates that his decision was based solely on whether Plaintiff's psychiatric ailments met the requirements of Listing 14.08N. However, this Court sees no indication that Listing 14.08N is limited to psychiatric complaints and their impact on function; rather, both physical and mental ailments which might result in disability are included. By not addressing whether Plaintiff's physical ailments might suffice under Listing 14.08N, the ALJ erred. The ALJ must utilize the correct legal standard. Blankenship., 874 F.2d at 1120-21. He did not do so, and a remand would be appropriate on this issue alone.

As to whether Plaintiff has a medical impairment which meets or medically exceeds Listing 14.08N, the Court again notes that Plaintiff has AIDS, bringing him within the broad category of

---

[2]As will be shown below, the Court has determined that "consultants" ought to be consultant, as it appears that only Dr. Rubini made this medication determination.

14.00 listings. Therefore, to satisfy the next criteria for a 14.08N listing, Plaintiff must have a documented, significant, repeated symptom. Dr. John Narro, Plaintiff's treating physician[3] and an infectious disease specialist, has consistently found that Plaintiff suffers from diarrhea, a significant, documented symptom:

June 10, 2002:       medication-induced nausea and loose stools [Tr. 263];

October 15, 2002:    intermittent watery stools, secondary to Kaletra[4] [Tr. 259];

January 29, 2003:    chronic loose stools secondary to Kaletra [Tr. 427];

March 3, 2003:       chronic loose stools secondary to Kaletra [Tr. 426];

May 7, 2003:         chronic loose stools secondary to Kaletra [Tr. 425];

August 13, 2003:     chronic loose stools secondary to Kaletra [Tr. 424];

September 16, 2003:  chronic loose stools secondary to Kaletra [Tr. 423];

November 18, 2003:   mild loose stools secondary to Kaletra [Tr. 422];

March 2, 2004:       "Persistent, intermittent nausea and vomiting and diarrhea related to Kaletra" [Tr. 511];

June 9, 2004:        chronic, persistent diarrhea related to Kaletra; Plaintiff states "he has some occasional fecal incontinence despite taking approximately 8

---

[3]Dr. Narro has been treating Plaintiff since July 30, 2001. [Tr. 276].

[4]Kaletra is a medication used to treat HIV. Its possible side effects include diarrhea, headaches, nausea, and weakness. [Tr. 172].

Lomotil[5] per day" [Tr. 503];

September 15, 2004:    "intermittent diarrhea related to Kaletra" [Tr. 497]; and

December 22, 2004:    "Persistent diarrhea related to Kaletra;" relatively controlled by Lomotil [Tr. 493].

Other doctors have also noted Plaintiff's recurring problems with diarrhea. On August 26, 2002, Plaintiff met with Patricia Maffeo, Ph.D., an employee with the Tennessee Disability Determination Services, and informed her that, when presented with negative information, he sometimes loses control of his bowels. [Tr. 215-18]. Dr. Maffeo assessed Plaintiff as suffering from diarrhea. [Id.]. Dr. Parvati Daram Ananthula noted Plaintiff's diarrhea was "still" present on November 27, 2002. [Tr. 414-15]. Dr. Ed Rogers, Plaintiff's therapist, noted on December 29, 2004, "he continues to have quite a bit of debilitating side effects from his treatment including periods of hours of diarrhea following the administration of his medicines." [Tr. 534].

Based on the complete record before this Court, Plaintiff clearly has a significant, documented symptom: diarrhea. Additionally, this symptom is repeated. Based on the Lomotil refill records and continual complaints to doctors, it is clear that Plaintiff suffers from this condition more than three times per year or once every four months. [Tr. 154, 159-170, 500, 502, 513]. To satisfy the remainder of Listing 14.08N, Plaintiff must prove that he has at least one of the following to a marked degree: (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; or (3) difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.08N.

_____

[5]Lomotil is the name brand for diphenoxylate, which is used to treat loose stools. [Tr. 171, 500, 502, 513].

On a Residual Functional Capacity Questionnaire, dated June 9, 2004, Dr. Narro found that Plaintiff suffers from nausea, vomiting, diarrhea, and a host of other symptoms. [Tr. 475-477]. Dr. Narro further stated that these symptoms were constantly severe enough to interfere with attention and concentration. [Id.]. Specifically, the diarrhea, which is caused by Kaletra, limits Plaintiff's ability to work at a regular job on a sustained basis because Plaintiff suffers from "chronic diarrhea" and "fecal incontinence." [Id.].

Dr. Steven Spalding, who provided psychiatric treatment to Plaintiff, completed a Mental Impairment Questionnaire on June 17, 2004. [Tr. 478-82]. He determined that Plaintiff has difficulty thinking or concentrating and difficulty in coping with stressful situations. [Id.]. He also found that Plaintiff has poor or no ability to: maintain regular attendance, complete a normal workday or workweek, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and deal with normal work stressors. [Id.]. Additionally, Dr. Spalding stated that Plaintiff often has deficiencies of concentration, and his impairments would necessitate more than three absences a month. [Id.].

Dr. Ed Rogers, Plaintiff's treating psychiatrist, stated on December 29, 2004, that Plaintiff was very depressed intermittently and, "he continues to have quite a bit of debilitating side effects from his treatment. . . ." [Tr. 402, 534]. Further, "his anxiety and depression also make it difficult for him to sustain effort of being able to concentrate." Id. Dr. Rogers also completed a Mental Impairment Questionnaire regarding Plaintiff. [Tr. 483-87]. His opinion largely echoes that of Dr. Spalding. [Id.] He too stated that he expects Plaintiff's impairments to result in more than three absences from work per month. Moreover, he found that Plaintiff has poor or no ability to: maintain

regular attendance, complete a normal workday and workweek, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stressors. In conclusion, Dr. Rogers stated that Plaintiff had marked restrictions on the activities of daily living, difficulties in maintaining social functioning, and frequent deficiencies of concentration. [Id.].

Accordingly, based on the medical evidence in the record, this Court finds that Plaintiff suffers from marked restrictions on his activities of daily living and maintaining social functioning. He also has marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Plaintiff's own testimony further substantiates this finding.

At his first administrative hearing,[6] Plaintiff testified that his diarrhea was constant, and that it limited his ability to leave the house for fear of getting diarrhea and not being able to make it to a bathroom. [Tr. 574, 578]. Specifically, Plaintiff testified that the

> Diarrhea is really uncontrollable, I have medicine to take for that but I mean there's been many times that I can't get in the house in time and I just refuse to go anywhere because I can't get too far away from the bathroom with, I mean, it just, it, it's just instant and you can't control it and I don't care how many pills you take. . . .

[Tr. 566-67]. He further stated that he has suffered from uncontrollable diarrhea since the end of 2001, but the bouts of nausea and diarrhea have become more prominent in recent months. [Tr. 569].

At the second administrative hearing,[7] Plaintiff testified that he continues to suffer from "spontaneous" diarrhea. [Tr. 598]. In fact, he had to leave the hearing to use the bathroom. [Tr.

---

[6]March 10, 2004. [Tr. 559-585].

[7]February 2, 2005. [Tr. 586-608].

608].  He stated that he has eight or nine episodes of diarrhea and/or loose bowels each morning, and

sometimes has two hour bouts of diarrhea.  [Tr. 595-96].  He continued to testify that his bowel

movements are "very sudden" and that he sometimes is incapable of moving from the living room

to the bathroom before having a bowel movement.  [Id.].  He testified that he has soiled himself "so

many times."  [Tr. 596-97].  When asked about whether he wears adult diapers, Plaintiff testified

that he does not wear them; he stated he cannot afford to buy them because food stamps cannot be

used to buy diapers, and he is trying to be as independent as possible.  [Tr. 605].

Beyond the medication-related side effect of diarrhea, Plaintiff testified to the impact of

AIDS on his life.  He testified that walking a short distance is challenging due to fatigue in his legs,

and that general fatigue causes him to take several naps throughout the day.  [Tr. 574-75, 598].  He

stated that he has trouble concentrating.  [Tr. 577].  He does not like to leave the house and interact

with people for fear of getting sick.  [Id.].  On a July 24, 2002, Activities of Daily Living

Questionnaire, Plaintiff stated that he suffers from extreme fatigue and has difficulty concentrating.

[Tr. 121-22].

The sole evidence that could be construed as contrary to Plaintiff's assertions that the effects

of AIDS are debilitating is provided by Dr. Joseph Rubini.[8]  Dr. Rubini answered interrogatories as

a medical expert.  [Tr. 546-48].  He is board-certified in internal medicine and oncology.  [Tr. 546].

He never performed a consultative exam on Plaintiff, but relied solely on furnished medical data.

[Id.].  In response to the ALJ's question, "In your opinion, do any of the claimant's impairments,

when taken individually, meet the requirements of any of the listed impairments in Section 14.00?

---

[8]This form was dated April 15, 2005. [Tr. 548].  The Court notes that Plaintiff is only
potentially insured for benefits through March 31, 2005 [Tr. 24].

Please fully explain this answer and cite appropriate provisions in Section 14.00," Dr. Rubini responded, "No. No infections which were clinically active in severe fashion. No G, H of active or severe fashion. No I, J, K, L, M, N of active or severe fashion." [Tr. 547]. Presumably, the letters contained in Dr. Rubini's report are subsections of Listing 14.08. Accordingly, Dr. Rubini conclusively, and without discussion, found that Plaintiff did not meet the listed impairment of 14.08N. Dr. Rubini did note that Plaintiff suffered from diarrhea "at times," but he opined that it was neither continuous nor frequent. [Tr. 547]. In response to the ALJ's question about whether conflicts exist in the medical record, Dr. Rubini responded, "his sx [(symptoms, presumably)] varied in intensity due to situational events (changes in meds, death of roommate, use of alcohol)." [Tr. 548]. However, Dr. Rubini did not state how such a fluctuation would be indicative of a conflict in the medical record; surely a person's symptoms might fluctuate depending upon "situational events," such as medication changes.

Dr. Rubini's opinion, contrary to the Commissioner's assertions, does not indicate either a conflict in the medical record or a lack of credibility as to Plaintiff or his treating physicians. Accordingly, the ALJ erred. Shelman v. Heckler, 821 F.2d 316, 320 (6th Cir. 1987) (holding that the medical opinions of treating physicians are accorded substantial deference, and, if uncontradicted, are entitled to complete deference). However, if an ALJ finds that the treating physician's opinion is not supported by sufficient medical data, then the ALJ may endorse a merely consultative physician's opinion and diagnosis. Id., at 321. But if an ALJ disregards a treating physician's opinion, then the ALJ must set forth some basis for rejecting those opinions. Id. The testimony of a non-treating physician cannot "[p]rovide a sufficient basis for rejecting the opinions of plaintiff's treating physicians since 'the opinion of a nonexamining physician is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'" Id. (citing Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).

The ALJ relied solely upon Dr. Rubini's opinion and found that Plaintiff's impairments did not meet or medically exceed those listed in 14.08N. [Tr. 24]. However, as noted above, Plaintiff's impairments do meet Listing 14.08, and the ALJ placed undue emphasis upon a consultative physician over a treating physician. See Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985) (holding that a treating physician's opinion is entitled to substantially greater weight that that of a non-examining medical advisor). Plaintiff's treating physicians found that he had significant, marked restrictions on the activities of daily life, which are caused by AIDS. Plaintiff's testimony alone could substantiate that he suffers from marked restrictions on daily life as a result of his AIDS infection. See Chelte v. Apfel, 76 F. Supp.2d 104, 108 (D. Mass. 1999) (relying on Plaintiff's own testimony, which was uncontradicted, to substantiate that she had difficulty in maintaining social functioning and difficulty in completing tasks in a timely manner sufficient to meet the requirements of 14.08N).

This Court has reviewed the entire record, as required by Cutlip, and finds that substantial evidence does not exist to support the ALJ's conclusion that Plaintiff does not have an impairment which meets or exceeds a listed impairment. 25 F.3d at 286. The ALJ failed to consider the total impact of Plaintiff's AIDS infection and its manifestations and medication-induced side-effects. Further, the ALJ did not provide good reasons to reject the treating physicians' assessments of Plaintiff's abilities. Therfore, the ALJ's determination that Plaintiff does not meet Listing 14.08N is not supported by substantial evidence and he failed to apply the proper legal standards.

Based on the errors in this case, a remand is required. The remaining question is whether

the District Court should reverse for an award of benefits or for further administrative proceedings. 42 U.S.C. § 405 (g). It is appropriate to order an award of benefits when "[a]ll essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994); Meece v. Comm. of Soc. Sec., 192 Fed. Appx. 456, 467, 2006 2271336, at *11 (6th Cir. Aug. 8, 2006) (unpublished) (relying on Faucher to reverse and award benefits). If a remand would merely involve the presentation of cumulative evidence, then reversal instead of remand is appropriate. Id.; Felisky v. Bowen, 35 F.3d 1027, 1041 (6th Cir. 1994).[9]

In this matter, the record adequately establishes that Plaintiff is entitled to benefits because "[t]he decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Faucher, 17 F.3d at 176 (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)). As such, Plaintiff's motion for summary judgment [Doc. 10] should be **GRANTED**, the Commissioner's motion for summary judgment [Doc. 14] should be **DENIED**, and the case should be remanded for an award of benefits.

### B. *Residual Functional Capacity*

Although this Court finds that a remand is appropriate at Step Three, the Court will proceed with its analysis of the remainder of Plaintiff's claims. Plaintiff alleges the ALJ erred at Step Five by improperly assessing his residual functional capacity ("RFC") and finding him capable of work.

---

[9]Where a decision is made at the third step in the five step sequential analysis of disability, remand is often appropriate. DeGrande v. Sec'y of Health & Human Servs., 8992 F.2d 1043, 1990 WL 94, at *3 (6th Cir. Jan. 2, 1990) (unpublished) (per curiam). However, "[i]f there is no substantial evidence that [a plaintiff] can perform even sedentary work [,] nothing would be gained by remanding for a hearing addressed to [the fifth step of the sequential framework]." Id. (citing Dorf v. Bowen, 794 F.2d 896, 903 (3d Cir. 1986) (alterations in DeGrande).

At Step Five of a disability inquiry, the Commissioner bears the burden of proving that other jobs are available for the claimant within the national economy if the claimant does not have a listed impairment and cannot do his last regular work. Born v. Sec'y of Health & Human Serv., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant cannot perform past relevant work, the Commissioner must prove that the claimant can perform other work, based on all relevant factors, including age, education, previous work experience, and RFC. Bruce, 1995 WL 154891, at *1. The ALJ determined that Plaintiff could not perform his past relevant work, therefore the Commissioner must prove that the claimant can perform other work. [Tr. 24].

The ALJ ruled Plaintiff had the RFC to perform unskilled sedentary exertion positions. Although Plaintiff claims that the ALJ assessed the wrong RFC, upon a thorough reading of Plaintiff's briefs, it appears that Plaintiff's actual argument is that the ALJ failed to take Plaintiff's need for excessive breaks and absenteeism into account when determining whether there are jobs in the national economy within Plaintiff's RFC category which Plaintiff could perform.

The record reflects that, though vocational experts testified at both hearings, the ALJ relied upon the medical-vocational grids to determine whether jobs existed in the national economy which Plaintiff could perform. The ALJ specifically found, that "although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rules 201.27/201.28 as a framework for decision-making, there are a significant number of jobs in that national economy that he could perform." [Tr. 24].

To determine whether a claimant can perform other work, an ALJ may rely on vocational testimony or the grids provided in the regulations. Id.; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.28. If the claimant only suffers from an impairment which limits his strength, then the

Commissioner may rely on the grids alone.  Abbott v. Sec'y of Health & Human Servs., 905 F.2d 918, 926 (6th Cir. 1990); Bruce, 1995 WL 154891, at *1 (relying on Abbott).  However, if an ALJ determines that a claimant has a significant nonexertional impairment, then the ALJ should consult a vocational expert instead of merely applying the grids.  Lucy v. Comm'r of Soc. Sec., 113 F.3d 905, 909 (8th Cir. 1997).  A "'[n]onexertional impairment' is one that would prevent an individual from meeting the demands of a job for reasons other than the job's physical strength requirements.  Examples would be mental illness, cognitive disabilities, and extreme sensitivity to dust or fumes."  Rogers v. Comm. of Soc. Sec., 225 F.2d 659, 2000 WL 799332, at *2 (6th Cir. June 9, 2000).  Moreover, an ALJ cannot rely on the grids exclusively if the claimant cannot perform a full or wide range of work within the assessed category.  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 529 (6th Cir. 1981); See also Saeed v. Sec'y of Health & Human Servs., 985 F.2d 561, 1993 WL 15150, at *2  (6th Cir. Jan. 22, 1993) (unpublished) (citing Abbott, 905 F.2d at 926-27).  In such scenarios, the ALJ must rely upon vocational expert testimony, which must be based on a hypothetical question "[t]hat fairly describes the claimant's physical and mental impairments."  Saeed, 1993 WL 15150, at *2 (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)).

    In the instant case, the ALJ found that Plaintiff's exertional limitations did not allow him to perform the full range of sedentary work.  [Tr. 24].  Because the ALJ found that Plaintiff could not perform a full range of sedentary work, a vocational expert should have been consulted.  See Saeed, 1993 WL 15150, at *2.  Further, a vocational expert should have been consulted and relied upon in regard to Plaintiff's significant nonexertional complaints.  The ALJ apparently decided that Plaintiff only suffered from exertional limitations.  However, this Court finds that, as argued by Plaintiff,

Plaintiff suffers from two important exertional limitations: the need for excessive breaks due to chronic diarrhea and substantial absenteeism due to the effects of AIDS. Undoubtedly, these two limitations would impact Plaintiff's ability to meet the demands of a job, which qualifies these limitations as nonexertional limitations for social security purposes. Rogers, 225 F.2d 659, 2000 WL 799332, at *2. In a similar situation, the Sixth Circuit ruled that "it may be necessary to have a vocational expert testify as to whether there are jobs available where an employer would be willing to accommodate such frequent absenteeism." Jones v. Sec'y of Health & Human Servs., 758 F.2d 653, 1985 WL 12990, at *3 (6th Cir. Feb. 8, 1985).

The Commissioner argues that the ALJ properly obtained and relied upon the testimony of a vocational expert. However, this argument is somewhat disingenuous, for reasons set forth below. The ALJ did properly obtain vocational expert testimony. In the second administrative hearing,[10] the ALJ asked Vocational Expert Jane Colvin Roberson, "If Mr. Hickle's description of his nausea and diarrhea episodes is found credible, would that be consistent with any sustained gainful employment?" [Tr. 608]. Ms. Colvin Roberson replied, "No[,] sir." [Id.]. She further stated that employers within the unskilled sedentary work category would only allow two scheduled fifteen minute breaks per day and absences of no more than two per month. [Tr. 608]. She opined that absences of more that three per month would not allow a person to sustain employment. [Tr. 609]. Though the ALJ solicited this testimony, he ultimately found the need for absences and breaks to be incredible, and failed to utilize the vocational expert's testimony. [Tr. 21-22, 24].

---

[10]In the first administrative hearing, the ALJ elicited the vocational expertise of Ed Smith. However, Ed Smith only reviewed Plaintiff's previous job history. He never stated what skills Plaintiff presently possessed and whether jobs were available that were suitable for someone with Plaintiff's limitations. [Tr. 581-83].

Dr. Narro, Plaintiff's treating physician, found that Plaintiff would need two unscheduled breaks per day of a fifteen to thirty minute duration. [Tr. 475-477]. Additionally, Plaintiff would be absent from work more than three times per month because of his impairments, which include diarrhea. [Id.]. Drs. Steven Spalding and Ed Rogers also assessed Plaintiff's need for absences. [Tr. 478-82, 483-87]. They both found that Plaintiff would be absent from work more than three times a month due to impairments. [Id.].

The ALJ's sole reference to Plaintiff's absenteeism was that Dr. Narro's opinion regarding absenteeism was not credible. [Tr. 21-22]. He also found that Plaintiff was not fully credible. [Tr. 22-24]. While credibility determinations reside with the ALJ, the ALJ's determinations must be reasonable and supported by substantial evidence. Rogers v. Comm. of Soc. Sec., 486 F.3d 234, 249 (6th Cir. 2007). Specifically, in regards to the treating physicians' opinions, the ALJ must provide "good reasons" for discounting their opinions. Id., at 242 (quoting Soc. Sec. Rul. 92-2p, 1996 WL 374188, at *5). The ALJ's determination is devoid of any attempt at "good reasons" for disregarding Dr. Narro's opinion or generally discrediting Plaintiff. The ALJ erred by failing to provide reasons for rejecting these opinions. Moreover, the Court finds the opinions of Plaintiff's treating physicians[11] to be credible, and the ALJ's dismissal of these opinions is error. The vocational expert's opinion, coupled with the medical opinions of record, conclusively establish that Plaintiff could not sustain employment because of excessive absenteeism.

### C. Psychiatric Opinions

Plaintiff argues that the ALJ erred by rejecting the opinions of Plaintiff's treating psychiatric

---

[11]The Court notes that Dr. Rogers and Dr. Spalding are not consultative physicians; the record reflects that they have treated Plaintiff intermittently throughout the past five years. [Tr. 402, 413, 534, 540, 543].

sources. Plaintiff argues that the ALJ improperly found that the assessment forms completed by Drs. Spalding and Rogers were inconsistent with the Global Assessment of Functioning ("GAF")[12] scores they assigned. The ALJ determined that Listing 14.08N was not met because Dr. Spalding, a treating psychiatrist, showed an assessment of "[n]o more than a slight restriction of activities of daily living or ability to maintain social functioning, and the equivalent of no more than moderate difficulty in sustaining concentration, persistence, or pace," and assessed a GAF which reached 65. [Tr. 21]. The ALJ noted that Dr. Rogers assessed marked or equivalent difficulties in these areas, but opined that such an assessment was inconsistent with the GAF of 55, which Dr. Rogers assessed. [Id.].

Substantial evidence does not support the ALJ's conclusion. First, as noted above, Plaintiff's impairment does meet or exceed that of Listing 14.08N. Further, as also noted above, the ALJ consistently and improperly discredited the opinions of Plaintiff's treating physicians, the other medical evidence of record, and Plaintiff's own testimony. Though the ALJ states that Dr. Spalding found that Plaintiff had "[n]o more than a slight restriction of activities of daily living or ability to maintain social functioning, and the equivalent of no more than moderate difficulty in sustaining concentration, persistence, or pace," Dr. Spalding actually found that Plaintiff had: slight restrictions of activities of daily living; slight difficulties in maintaining social functioning; often deficient concentration, persistence or pace, resulting in failure to complete tasks in a timely manner; and continual episodes of deterioration or decompensation which cause the individual to withdraw from the situation or experience exacerbation of signs and symptoms. [Tr. 482]. Dr. Rogers determined

---

[12]A GAF is a clinician's subjective rating, on a zero to 100 scale, of an individual's overall psychological functioning. Kornecky v. Comm. of Soc. Sec., 167 Fed. Appx. 496, 503 n.7, 2006 WL 305648, at *5, n.7 (6th Cir. Feb. 9, 2006) (unpublished) (per curiam).

that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and frequent deficiencies of concentration. [483-87].

The Court notes that Plaintiff's GAF was also assessed by Dr. Arun Jethanandani, who treated Plaintiff in-house from January 16 to January 20, 2001. [Tr. 395-97]. Dr. Jethanandani assessed Plaintiff's GAF as 35-45. [Id.]. Further, a review of the entire record demonstrates that Plaintiff has severe psychologic and psychiatric problems, including depression, anxiety, and schizoaffective disorder. [Tr. 215-218, 219-232, 263, 402, 413, 415, 535, 543].

The ALJ's reliance on a few GAF scores is misplaced. The totality of Dr. Rogers and Dr. Spalding's treatment record is of greater weight than that of a GAF score, which is merely a subjective number. Kornecky, 167 Fed. Appx. 496, 503 n.7, 2006 WL 305648, at *5, n.7 (6th Cir. Feb. 9, 2006) (unpublished) (per curiam). A GAF number "[i]s not raw medical data." Id. As such, this Court finds that the ALJ improperly rejected Plaintiff's treating psychiatric sources' opinions. Additionally, this Court finds no substantial evidence to support the ALJ's determination that the doctors' assessment forms were contradictory with the GAF scores they assessed.

## V.    Conclusion

For the reasons stated herein, it is hereby **RECOMMENDED**[13] that Plaintiff's motion for summary judgment [Doc. 10] be **GRANTED** and that the Commissioner's motion for summary judgment [Doc. 14] be **DENIED**.  Accordingly, this Court recommends that the Commissioner's decision be reversed, and on remand, benefits should be awarded.

Respectfully submitted,


_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[13]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).